IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TYMR ABDULLAH | § | |
| Lampasas No. 25550 | § | |
| | § | |
| V. | § | A-18-CA-1076-LY |
| | § | |
| THE STATE OF TEXAS, et al. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(f) of Appendix C of the Local Court. Before the Court are Plaintiff's complaint, more definite statement, and supplements. Plaintiff, proceeding pro se, has been granted leave to proceed in forma pauperis.

STATEMENT OF THE CASE

At the time he filed his complaint pursuant to 42 U.S.C. § 1983, Plaintiff was confined in the Lampasas County Jail. Plaintiff alleges John Doe Officers 1, 2, and 3 arrested him on November 26, 2018, for theft over $2,500.00. Plaintiff contends this felony charge is malicious, because the officers were aware Plaintiff only stole two cell phones valued less than $2,500.00. He concludes this makes the crime a misdemeanor. Plaintiff requests this Court to conduct an evidentiary hearing on the matter and award him $10 million in damages. He sues the State of Texas, the Lampasas District Attorney, the Lampasas Police Department, the County Jail, Police Officers John Doe 1, 2, and 3, Magistrate Gradel,[1] Judge John Gauntt, B. Pomeroy, and AJ Garcia.

---

[1] Magistrate Judge Gradel is substituted for the defendant previously docketed as "Magistrate Judge Grade 1."

After review of Plaintiff's complaint, the Court ordered Plaintiff to file a more definite statement. In his more definite statement, Plaintiff asserts the John Doe Officers were the arresting officers. Plaintiff asserts Judge Gradel set bail at $5,000.00 even though Plaintiff informed the judge his crime was a misdemeanor. Plaintiff makes a similar claim against Judge Gauntt. However, Plaintiff admits a grand jury indicted him on December 12, 2018, for theft of over $2,500.00. With respect to B. Pomeroy and AJ Garcia, Plaintiff clarifies they are both jailers. He contends that, while in jail, they denied him "yard/church" and did not give him toothpaste or a pencil. Subsequently, Plaintiff filed a document entitled "Federal Habeas Corpus" [#8]. In it he complains his court date in Lampasas County was postponed in retaliation for filing this lawsuit. Plaintiff also indicates his criminal case was postponed indefinitely pending a psychological evaluation recommended by jail staff. Plaintiff seeks his immediate release.

On January 17, 2019, the Court received Plaintiff's "Addendum" [#9]. Plaintiff alleges A. Garcia, Salinas, and Sgt. Reza gave him a "few doses of pepper spray" presumably for "kicking door as they said stop or stop yelling." Plaintiff asserts he was then taken "outside for yard while officers cleaned [his] cell." Upon returning to his cell, Plaintiff admits he was given a fresh indigent pack with toothpaste and was told he previously was not given supplies because of a "security risk." Plaintiff indicates he was also told his evaluation with Dr. Pugiliese would take place that week. Plaintiff further indicates he mailed a letter to Judge Gauntt, informing him that Plaintiff would be invoking his right to represent himself and relieving Mr. Zachary Boyd from his duties as defense counsel. On January 28, 2019, the Court received a second addendum [#10]. Plaintiff again informs the Court he notified Judge Gauntt that he would be invoking his right to self representation.

On February 4, 2019, the Court received an "Amendment/Addendum" [#11] executed by Plaintiff on January 30, 2019. In it, he states that on January 23, 2019, his cell was "freezing cold." According to Plaintiff, Jailers Reza and Salinas indicated the thermostat had been broken. Plaintiff asserts he heard officers on the roof of the jail "tinkering with the air vent system possibly to correct problem or to separate [sic] the system from the other cells to isolate [Plaintiff's] cell as other prisoners would cease to complain yet the temp. was uncharacteristically frigid."

On February 21, 2019, the Court received an update from Plaintiff. According to Plaintiff, Dr. Pugiliese conspired with the defendants to have Plaintiff committed to a hospital "under the auspices of psychotic disorder, dillusions [sic] of persecution and ideas of reference." Plaintiff asserts his attorney continues to represent him without his consent and without ever speaking to Plaintiff since his arrest in November. Plaintiff indicates he could be held up to 120 days pending bed availability at an Austin psychiatric hospital. Plaintiff requests the Court to restore him back to "freedom and safety protected by the U.S. Constitution."

DISCUSSION AND ANALYSIS

A.    <u>Standard Under 28 U.S.C. § 1915(e)</u>

An in forma pauperis proceeding may be dismissed sua sponte under 28 U.S.C. § 1915(e) if the court determines the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief against a defendant who is immune from suit. A dismissal for frivolousness or maliciousness may occur at any time, before or after service of process and before or after the defendant's answer. <u>Green v. McKaskle</u>, 788 F.2d 1116, 1119 (5th Cir. 1986).

When reviewing a plaintiff's complaint, the court must construe plaintiff's allegations as liberally as possible. <u>Haines v. Kerner</u>, 404 U.S. 519 (1972). However, the petitioner's pro se status

does not offer him "an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets." Farguson v. MBank Houston, N.A., 808 F.2d 358, 359 (5th Cir. 1986).

B.  Eleventh Amendment Immunity

Plaintiff's claims against the State of Texas are barred by the Eleventh Amendment. The Eleventh Amendment generally divests federal courts of jurisdiction to entertain suits directed against states. Port Auth. Trans-Hudson v. Feeney, 495 U.S. 299, 304 (1990).

C.  Lampasas County District Attorney

Plaintiff's claims against District Attorney Greenwood are barred by prosecutorial immunity. Prosecutors are absolutely immune from liability under the federal civil rights statutes with regard to actions taken by them within the course and scope of representing the governmental agencies and subdivisions in judicial proceedings. Under the doctrine of prosecutorial immunity, a prosecutor is absolutely immune in a civil rights lawsuit for any action taken in connection with a judicial proceeding. Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993); Burns v. Reed, 500 U.S. 478, 487-92 (1991); Imbler v. Pachtman, 424 U.S. 409, 427-31 (1976). "[A]cts undertaken by the prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protection of absolute immunity." Boyd v. Biggers, 31 F.3d 279, 285 (5th Cir. 1994) (quoting Buckley v. Fitzsimmons 509 U.S. at 273). Prosecutorial immunity applies to the prosecutor's actions in initiating the prosecution and in carrying the case through the judicial process. Boyd, 31 F.3d at 285; Graves v. Hampton, 1 F.3d 315, 318 (5th Cir. 1993). Thus, a prosecutor is immune from civil rights liability for actions taken in connection with a judicial proceeding, even if taken maliciously. Brummett v. Camble, 946 F.2d

1178, 1181 (5th Cir. 1991), cert. denied, 504 U.S. 965 (1992); Rykers v. Alford, 832 F.2d 895, 897 (5th Cir. 1987).

The Court recognizes that not all prosecutorial functions are protected. In Imbler, the Court declared that absolute immunity applied to a prosecutor's actions in "initiating a prosecution and in presenting the State's case." Imbler, 424 U.S. at 431. This immunity protected the alleged knowing use of false testimony at trial and the alleged deliberate suppression of exculpatory evidence. In Imbler, the Court left open the issue of whether absolute immunity applied to administrative or investigative acts. However, in Burns, the Court answered that question, stating that absolute immunity does not apply to investigative or administrative acts performed by prosecutors. Burns, 500 U.S. at 493.

In the case at hand, Plaintiff challenges actions or inactions taken by the prosecuting attorney during Plaintiff's criminal proceedings which are clearly protected by prosecutorial immunity. In this action Plaintiff does not allege any actions taken by the defendant that were outside the course and scope of representing the Lampasas County District Attorney's Office in Plaintiff's criminal proceedings. Therefore, District Attorney Greenwood is protected by absolute immunity.

D.  Judges Gauntt and Gradel

Plaintiff's claims against Judges Gauntt and Gradel are barred by judicial immunity. It is well settled law that a judge enjoys absolute immunity from liability for damages for judicial acts performed within his jurisdiction. Hale v. Harney, 786 F.2d 688, 690 (5th Cir. 1986). The doctrine of absolute judicial immunity protects judges not only from liability, but also from suit. Mireless v. Waco, 502 U.S. 9, 11 (1991). Motive of the judicial officer is irrelevant when considering absolute immunity. See Mitchell v. McBryde, 944 F.2d 229, 230 (5th Cir. 1991) ("The judge is

absolutely immune for all judicial acts not performed in clear absence of all jurisdiction, however erroneous the act and however evil the motive.").

Absolute judicial immunity is overcome in only two rather narrow sets of circumstances: first, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity, and second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction. Mireless, 502 U.S. at 11-12. "A judge's acts are judicial in nature if they are 'normally performed by a judge' and the parties affected 'dealt with the judge in his judicial capacity.'" Boyd v. Biggers, 31 F.3d 279, 285 (5th Cir. 1994) (quoting Mireless, 502 U.S. at 12). In the case at bar, Plaintiff does not complain of any actions taken by Judges Gauntt or Gradel that were nonjudicial in nature nor does he show that they were acting in the clear absence of all jurisdiction. Accordingly, Judges Gauntt and Gradel are protected by absolute immunity.

E.  Lampasas Police Department and Lampasas County Jail

The Lampasas Police Department and County Jail are not legal entities capable of being sued. See Guidry v. Jefferson County Detention Center, 868 F. Supp. 189, 191 (E.D. Tex. 1994) (holding that the Jefferson County Detention Center is not a legal entity subject to suit); Darby v. Pasadena Police Dep't, 939 F.2d 311 (5th Cir. 1991) (holding that police and sheriff's departments are governmental subdivisions without capacity for independent legal action). Therefore, Plaintiff's claims against the Lampasas Police Department and Lampasas County Jail should be dismissed.

F.  Jailers

1.  *Due Process*

Plaintiff alleges he was denied "yard/church" and was given no toothpaste or a pencil. He additionally alleges his cell was cold. Plaintiff admits in later pleadings he was taken to the yard,

6

given toothpaste and a pencil, and told the thermostat was broken but was being repaired. The constitutional rights of a pretrial detainee are found in the procedural and substantive due process guarantees of the Fourteenth Amendment. Hare v. City of Corinth, Miss., 74 F.3d 633, 639 (5th Cir.1996) (en banc). This is because,

> when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 200 (1989). Though the state has a recognized interest in detaining defendants for trial, the substantive limits on state action set by the Due Process Clause provide that the state cannot punish a pretrial detainee. Bell v. Wolfish, 441 U.S. 520, 535 (1979). In the Fifth Circuit, the legal standard used to measure the due process rights of pretrial detainees depends on whether the detainee challenges the constitutionality of a condition of his confinement or whether he challenges an episodic act or omission of an individual state official. Hare, 74 F.3d at 644–45.

Here, Plaintiff pleads an episodic-act-or-omission claim. An episodic-act-or-omission claim, "faults specific jail officials for their acts or omissions." Id. at 452; see also Scott v. Moore, 114 F.3d 51, 53 (5th Cir.1997) (en banc) ("[W]here the complained-of harm is a particular act or omission of one or more officials, the action is characterized properly as an 'episodic act or omission' case. . . ."). In such a case, an actor is "interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." Scott, 114 F.3d at 53. The relevant question becomes

7

"whether that official breached his constitutional duty to tend to the basic human needs of persons in his charge," and intentionality is no longer presumed. Hare, 74 F.3d at 645. A jail official violates a pretrial detainee's constitutional right to be secure in his basic human needs only when the official had "subjective knowledge of a substantial risk of serious harm" to the detainee and responded to that risk with deliberate indifference. Id. at 650. In other words, the state official must know of and disregard an excessive risk to inmate health or safety. Estate of Henson v. Krajca, 440 Fed. Appx. 341, 343 (5th Cir. 2011). "'[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002)).

Plaintiff fails to sufficiently allege a constitutional violation against the jailers. Plaintiff does not allege he suffered any injury as a result of being temporarily denied "yard/church," toothpaste, and a pencil, or having his cell too cold on certain occasions. Plaintiff also does not allege the jailers acted with deliberate indifference to his needs or that Plaintiff was subjected to a substantial risk of serious harm.

2. *Excessive Force*

Plaintiff does not make clear whether he is attempting to add a claim of excessive force with regard to the use of pepper spray. Out of an abundance of caution, the Court addresses this potential claim.

The use of force on a pretrial detainee violates the Fourteenth Amendment if it is unreasonable. Graham v. Connor, 490 U.S. 386, 395-97 (1989). The Supreme Court has held the inquiry into whether force was reasonable is "solely" objective. Kingsley v. Hendrickson, 135 S.

Ct. 2466, 2473 (2015). The following considerations bear on the reasonableness of the force used by the defendant:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id. Furthermore, the Supreme Court has held the "core judicial inquiry" with regard to a claim of excessive force is "'whether [the] force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson v. McMillan, 503 U.S. 1, 6-7 (1990)). A de minimis injury is sufficient to sustain a claim of excessive force only if it is the product of the malicious and sadistic use of force. Id. at 37-38.

Plaintiff admits the pepper spray was used in response to Plaintiff kicking the door after he had been warned to stop. Plaintiff further admits he was removed from his cell, and his cell was cleaned after the use of the pepper spray. Moreover, Plaintiff alleges no injury with respect to the use of pepper spray. Accordingly, Plaintiff has failed to allege a violation of his constitutional rights.

### G. Police Officers John Doe 1, 2 and 3

Construing Plaintiff's complaint liberally, Plaintiff may be asserting a Fourth Amendment claim against Officers John Doe 1, 2 and 3. Plaintiff appears to argue he was arrested and is being prosecuted without probable cause in violation of the Fourth Amendment, because the value of the stolen phones is less than $2,500.00. Plaintiff's claims fail. "It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party."

9

Taylor v. Gregg, 36 F.3d 453, 456 (5th Cir. 1994), overruled on other grounds by Castellano v. Fragozo, 352 F.3d 939 (5th Cir. 2003) (en banc). This rule applies "even if the independent intermediary's action occurred after the arrest, and even if the arrestee was never convicted of any crime." Buehler v. City of Austin/Austin Police Dep't, 824 F.3d 548, 554 (5th Cir. 2016).

There is an exception to the independent intermediary rule "if the plaintiff shows that 'the deliberations of that intermediary were in some way tainted by the actions of the defendant.'" Deville v. Marcantel, 567 F.3d 156, 170 (5th Cir. 2009) (quoting Hand v. Gary, 838 F.2d 1420, 1428 (5th Cir. 1998) ). "[B]ecause the intermediary's deliberations protect even officers with malicious intent," Buehler, 824 F.3d at 555, "a plaintiff must show that the [officer's] malicious motive led the [officer] to withhold relevant information or otherwise misdirect the independent intermediary by omission or commission." McLin v. Ard, 866 F.3d 682, 689 (5th Cir. 2017). When analyzing allegations of taint at the motion to dismiss stage, "'mere allegations of 'taint,'" Cuadra v. Hous. Indep. Sch. Dist., 626 F.3d 808, 813 (5th Cir. 2010) (quotation omitted), "may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference." McLin, 866 F.3d at 690. Plaintiff admits a grand jury indicted him for theft over $2,500.00. Although Plaintiff disagrees about the value of the stolen phones, he does not allege the grand jury proceedings were tainted. As such, Plaintiff fails to allege a valid constitutional violation against the officers.

Alternatively, Plaintiff's claims against the officers are barred by Heck v. Humphrey, 512 U.S. 477, 486-87 (1994) and the Fifth Circuit's application of Heck to state prisoner § 1983 lawsuits in Boyd v. Biggers, 31 F.3d 279 (5th Cir. 1994). In Heck, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

If Plaintiff is convicted of theft of over $2,500.00 but proves the value of the stolen phones is less that $2,500.00, he would call into question the validity of his conviction. But he cannot do his until his conviction is reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

### H. Habeas Claims

To the extent Plaintiff seeks his immediate release, he must seek such relief in an application for habeas corpus relief after he has exhausted his state court remedies. The exclusive remedy for a prisoner challenging the fact or duration of his confinement, seeking immediate or speedier release is habeas corpus relief. Preiser v. Rodriguez, 411 U.S. 475, 488-490 (1973). Because Plaintiff has not exhausted this claim, the Court will not construe this action as a request for habeas corpus relief.

### RECOMMENDATION

It is therefore recommended that Plaintiff's claims against the State of Texas be dismissed without prejudice for want of jurisdiction. It is further recommended that Plaintiff's remaining claims for monetary relief be dismissed with prejudice for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e). It is finally recommended that Plaintiff's request for habeas corpus relief be dismissed without prejudice to refiling an application for habeas corpus relief after Plaintiff has exhausted his state court remedies.

It is further recommended that Plaintiff be warned that if Plaintiff files more than three actions or appeals while he is a prisoner which are dismissed as frivolous or malicious or for failure to state a claim on which relief may be granted, then he will be prohibited from bringing any other actions in forma pauperis unless he is in imminent danger of serious physical injury. See 28 U.S.C. § 1915(g).

In the event this Report and Recommendation is accepted, adopted or approved, it is recommended that the Court direct the Clerk to e-mail a copy of its order and judgment to the keeper of the three-strikes list.

## OBJECTIONS

Within 14 days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636 (b)(1)(C). Failure to file written objections to the proposed findings and recommendations contained within this report within 14 days after service shall bar an aggrieved party from de novo review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc); Thomas v. Arn, 474 U.S. 140, 148 (1985); Rodriguez v. Bowen, 857 F.2d 275, 276-277 (5th Cir. 1988).

SIGNED this 27th day of February, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE